T.C. Memo. 1996-502


UNITED STATES TAX COURT


ELAINE S. BENNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8545-96.                    Filed November 7, 1996.


<u>Vernon E. Robbins</u>, for petitioner.

<u>Alan R. Peregoy</u>, for respondent.


MEMORANDUM OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  Respondent determined a deficiency in petitioner's Federal excise tax under section 4980A for the taxable year 1991 in the amount of $26,672.[2]

The issue for decision is whether the Transfer Refund distribution received by petitioner in 1991 from the Maryland State Employees' Retirement System is subject to the 15-percent excise tax under section 4980A as an excess distribution from a qualified plan.

This case was submitted fully stipulated under Rule 122, and the facts stipulated are so found.  Petitioner resided in Cambridge, Maryland, at the time that her petition was filed with the Court.

I.  Background

At all times relevant to this case, petitioner was employed as an employment specialist by the Maryland State Department of

---

[1]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]     Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans.  This tax is included within ch. 43 of the I.R.C. and is subject to the deficiency procedures set forth in subch. B of ch. 63 of the I.R.C.  See sec. 6211(a).

Economic and Employment Development in Cambridge, Maryland.[3]  As a Maryland State employee, petitioner was a member of the Maryland State Employees' Retirement System (the Retirement System) until she transferred to the Maryland State Employees' Pension System (the Pension System), effective February 1, 1991.

A.  The Retirement System and the Pension System

Both the Retirement System and the Pension System are qualified defined benefit plans under section 401(a), and the trust maintained as part of each plan is exempt from tax under section 501(a).

The Retirement System requires mandatory nondeductible employee contributions.  In contrast, the Pension System does not generally require such contributions.  The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems.[4]

B.  The Transfer Refund

On January 4, 1991, petitioner elected to transfer from the Retirement System to the Pension System, effective February 1, 1991.  As a result of the election to transfer, petitioner

---

[3]  Petitioner remained employed by the State of Maryland at the time that this case was submitted to the Court in July 1996.

[4]  For a further discussion of the Retirement System and the Pension System, see Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996), vacating and remanding T.C. Memo. 1995-148; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984).

received a distribution (the Transfer Refund) from the Retirement System in the amount of $348,483.42, which petitioner received in the form of a check dated February 28, 1991.

The Transfer Refund consisted of $21,461.94 in previously taxed contributions made by petitioner, and $327,655.59 of earnings in the form of interest.[5]  The earnings constitute the taxable portion of the Transfer Refund.

If petitioner had not transferred to the Pension System but had remained a member of the Retirement System, she would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, at age 60.  She would not have been entitled to receive a Transfer Refund because a Transfer Refund is payable only as a result of transferring from the Retirement System to the Pension System.

As a result of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System.  As a member of the Pension System, petitioner is entitled to receive a retirement benefit based upon her salary and her creditable years of service, specifically including those years of creditable service recognized under the Retirement System.  However, because petitioner received the

---

[5]     So stipulated.  However, the sum of these two amounts equals $349,117.53, which sum exceeds the amount of the Transfer Refund (i.e., $348,483.42) by $634.11.  This discrepancy is not explained in the record.

Transfer Refund on account of transferring from the Retirement System to the Pension System, petitioner's monthly annuity will be less than the monthly annuity she would have received if she had not transferred to the Pension System but had retired under the Retirement System.[6]

### C.  Petitioner's Federal Income Tax Return

Petitioner did not attempt to roll over the taxable portion of the Transfer Refund.  See sec. 402(a)(5).  Rather, on her Federal income tax return (Form 1040) for 1991, petitioner reported such portion of the Transfer Refund as ordinary income.[7] Further, in computing her income tax liability for 1991, petitioner did not attempt to income average pursuant to section 402(e)(1); rather, she computed such liability by reference to the tax rate schedule applicable to her filing status.

In the notice of deficiency, respondent characterized the taxable portion of petitioner's reported retirement distributions

------

[6]  It should be recalled that petitioner remained employed by the State of Maryland at the time that this case was submitted to the Court in July 1996.

[7]  Petitioner also reported on her return another retirement distribution in the gross (and taxable) amount of $158.  Accordingly, petitioner reported total retirement distributions in the gross amount of $348,641 (i.e., $348,483 + $158) and in the taxable amount of $327,814 (i.e., $327,656 + $158).  The parties have stipulated that the $158 distribution, as well as the Transfer Refund (in the amount of $348,483), was received from the Retirement System.  However, the record does not disclose the relationship of the $158 distribution to the Transfer Refund.  See infra note 8 and the accompanying text.

that exceeded $150,000 as an excess distribution from a qualified retirement plan.[8]  Respondent then determined that petitioner was liable for the excise tax under section 4980A in an amount equal to 15-percent of such excess distribution.

D.  Remaining Matters

The present value of petitioner's accrued benefit in the Retirement System as of August 1, 1986, did not exceed $562,500.

Petitioner has not made an election under section 4980A(f).

II.  Discussion

The issue for decision is whether petitioner is liable for the 15-percent excise tax for an excess retirement distribution under section 4980A.

A.  Statutory Analysis

Section 4980A imposes a 15-percent excise tax on the excess distributions with respect to an individual during the calendar year.  Sec. 4980A(a).  As relevant herein, an "excess distribution" is defined as the aggregate amount of the retirement distributions with respect to the individual during the calendar year to the extent that such amount exceeds

---

[8]     The computation was as follows:

| | |
|---|---|
| Taxable distribution | $327,814 |
| less: threshold | (150,000) |
| Excess distribution | 177,814 |

On brief, respondent concedes that the excess distribution was only $177,655.59, i.e., $327,655.59 (the taxable portion of the Transfer Refund) less $150,000.

$150,000.[9]  Sec. 4980A(c)(1)(A).

As relevant herein and with respect to an individual, the term "retirement distribution" is defined as the amount distributed under a qualified employer plan with respect to which such individual is or was the employee.  Sec. 4980A(e)(1)(A). Again as relevant herein, a "qualified employer plan" is defined as any plan described in section 401(a) that includes a trust exempt from tax under section 501(a).  Sec. 4980A(e)(2)(A).

As previously stated, both the Retirement System and the Pension System are qualified defined benefit plans under section 401(a), and the trust maintained as part of each plan is exempt from tax under section 501(a).  Accordingly, the Retirement System and the Pension System constitute "qualified employer plans" within the meaning of section 4980A(e)(2)(A).

Also as previously stated, petitioner received the Transfer Refund from the Retirement System as a result of her election to transfer to the Pension System and in her capacity as an employee of the State of Maryland.  Accordingly, the taxable portion of

---

[9]  Sec. 4980A(c)(2) serves to exclude various distributions from the aggregate amount of an individual's retirement distributions.  Thus, for example, sec. 4980A(c)(2)(C) excludes a distribution that is attributable to after-tax employee contributions.  However, because respondent determined that only the taxable portion of the Transfer Refund constitutes a retirement distribution, the exclusion authorized by sec. 4980A(c)(2)(C) is not applicable to the present case, nor are any of the other exclusions authorized by sec. 4980A(c)(2) applicable herein.

the Transfer Refund constitutes a "retirement distribution" within the meaning of section 4980A(e)(1)(A).  Cf. sec. 4980A(c)(2)(C).

In view of the foregoing, it necessarily follows that the taxable portion of the Transfer Refund that exceeds $150,000; i.e., $327,655.59 less $150,000, or $177,655.59, constitutes an "excess distribution" within the meaning of section 4980A(c)(1)(A).  Accordingly, petitioner is liable for the 15-percent excise tax on excess distributions under section 4980A(a).  See Emmons v. Commissioner, T.C. Memo. 1996-265; Powell v. Commissioner, T.C. Memo. 1996-264; Montgomery v. Commissioner, T.C. Memo. 1996-263; see also O'Connor v. Commissioner, T.C. Memo. 1994-170 (regarding section 4974).

B.  Petitioner's Contention

Notwithstanding the foregoing, petitioner argues that she is not liable for the excise tax under section 4980A(a) because the Transfer Refund was not paid to her on account of her retirement but rather as an inducement for her to transfer from the Retirement System to the Pension System.  In this regard, petitioner relies heavily on the fact that she remained an active employee of the State of Maryland at the time that she received the Transfer Refund and continuously thereafter.  Thus, in petitioner's view, the Transfer Refund did not constitute a retirement distribution because "petitioner has not retired from

her position or occupation and is still employed."

We accept as a fact that the Transfer Refund was not paid to petitioner on account of her retirement but rather as an inducement for her to transfer from the Retirement System to the Pension System. We also accept as a fact that petitioner has not retired and is still employed. However, we reject petitioner's argument that the Transfer Refund did not constitute a retirement distribution within the meaning of section 4980A.

The fatal flaw in petitioner's argument is that the term "retirement distribution" is statutorily defined. Thus, petitioner's reliance on Webster's Dictionary definition of "retirement", as a "withdrawal from one's position or occupation", is to no avail. Our analysis is necessarily governed by the meaning of the operative term as it is specifically defined by Congress and not as it may be more popularly construed. 2A Singer, Sutherland Statutory Construction sec. 47.07, at 151, (5th ed. 1992).

As we have already discussed, section 4980A(e)(1)(A) defines the term "retirement distribution" to mean the amount distributed during the taxable year under a qualified employer plan with respect to which the individual is or was the employee. Petitioner's Transfer Refund fits squarely within this definition. Indeed, petitioner admits that she "received a distribution [the Transfer Refund] from her qualified plan [the

Retirement System]".

Further, we observe that the statutory definition of "retirement distribution" in section 4980A(e)(1)(A) expressly contemplates that an individual may receive a retirement distribution even if the individual is not retired. Thus, as we have just indicated, the statute provides that the term "retirement distribution" means the amount distributed during the taxable year under a qualified employer plan with respect to which the individual is, or was, the employee. By speaking in the present tense, as well as in the past tense, section 4980A(e)(1)(A) indicates that an individual need not be retired in order to receive a "retirement distribution".

C. Sec. 54.4981A-1T, Temporary Qualified Pension Plan Excise Tax Regs.

We also take note of the fact that petitioner's argument is contrary to the applicable regulation. Thus, sec. 54.4981A-1T(a-8), Temporary Qualified Pension Plan Excise Tax Regs., 52 Fed. Reg. 46751 (Dec. 10, 1987), provides in relevant part that "all distributions from qualified employer plans * * * must be taken into account in determining an individual's excess distributions for the calendar year in which such distributions are received."[10] (Emphasis added.) There is nothing in the

_____

[10] Sec. 4980A was originally enacted as sec. 4981A by sec. 1133(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat.
(continued...)

regulation that suggests that an individual must be retired in order to receive a "retirement distribution". In other words, there is nothing in the regulation to suggest that "all" means "some".

### D. Case Law

We also take note of the fact that petitioner's argument is contrary to several decisions of this Court. Thus, in Rodoni v. Commissioner, 105 T.C. 29, 40 (1995), the Court had little difficulty in holding that the taxpayer was liable for the excise tax under section 4980A, even though the taxpayer received a lump-sum distribution from his corporation's profit sharing plan in 1988 but continued to be employed by his corporation "until the present". Rodoni v. Commissioner, supra at 30.

In Montgomery v. Commissioner, T.C. Memo. 1996-263, the Court also held that the taxpayer was liable for the excise tax under section 4980A. There the taxpayer, a teacher employed by the Hagerstown, Maryland Community College, received a distribution (in the form of a transfer refund from the Maryland State Teachers' Retirement System) in 1990. However, the taxpayer remained so employed at least through the time that the

_____

(...continued)
2085, 2481-2483. It was subsequently renumbered by sec. 1011A(g)(1)(A) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3479. Because the applicable regulation does not reflect the statutory renumbering, the regulation appears as sec. 54.4981A-1T, Temporary Qualified Pension Plan Excise Tax Regs., 52 Fed. Reg. 46750 (Dec 10, 1987).

case was submitted for decision in April 1995.

In Powell v. Commissioner, T.C. Memo. 1996-264, the Court also held that the taxpayer was liable for the excise tax under section 4980A. There the taxpayer, a teacher employed in the Baltimore and Hagerstown Public Schools until his retirement in 1992, received a distribution (in the form of a transfer refund from the Maryland State Teachers' Retirement System) in 1990.

We acknowledge that the argument advanced by petitioner in the present case was not expressly addressed by the Court in Rodoni v. Commissioner, supra; Montgomery v. Commissioner, supra; or Powell v. Commissioner, supra. Nevertheless, we think that the latter three cases are significant because the analysis therein represents an application of the statutory language of section 4980A that applies straightforwardly to the present case.

### E. Legislative Intent

Petitioner also argues that Congress did not intend for the excise tax under section 4980A to apply to amounts distributed under a qualified employer plan to an individual who is not retired. Here, however, we are reminded of the admonition of the Supreme Court that "There is * * * no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. American Trucking Associations, 310 U.S. 534, 543 (1940). Thus, where a statute appears to be clear on its face, unequivocal

evidence of legislative purpose must be demonstrable if we are to construe the statute so as to override the plain meaning of the words used therein.  <u>Estate of Owen v. Commissioner</u>, 104 T.C. 498, 507-508 (1995), and cases cited therein.  Petitioner has made no such showing.  Indeed, the legislative history of section 4980A is harmonious with the plain meaning of the statute.

Section 4980A originated in section 1133 of H.R. 3838, as reported by the House Committee on Ways and Means on December 7, 1985.  H. Rept. 99-426, at 745-746 (1985), 1986-3 C.B. (Vol. 2) 745-746, on H.R. 3838 provides in pertinent part as follows:

> In addition, the bill imposes a new excise tax on excess distributions from qualified retirement plans * * * .  To the extent that aggregate annual distributions paid to a participant from such tax-favored retirement savings arrangements are excess distributions, the bill generally imposes an excise tax equal to 15 percent of the excess.
>
>     *    *    *    *    *    *    *
>
> In applying the additional tax, <u>all</u> distributions made with respect to any individual during a calendar year will be aggregated, regardless of the form of the distribution or the number of recipients.  Thus, for example, <u>all</u> distributions received during a year, whether paid under a life annuity, a term certain, or <u>any other benefit form (including an ad hoc distribution)</u> generally will be aggregated in applying the tax.  [Emphasis added.]

The conference report on H.R. 3838 is equally instructive. It provides in relevant part as follows:

> The conference agreement generally follows the House bill with respect to the 15-percent excise tax on benefit payments * * * .  The conference agreement also clarifies that distributions attributable to after-tax employee contributions and distributions not includible in income by reason of a rollover contribution are not

taken into account in applying the tax.  All other amounts not specifically exempted are taken into account.  [H. Conf. Rept. 99-841, 1986-3 C.B. (Vol. 4) 477; emphasis added.]

See also Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, 754-760 (J. Comm. Print 1987).

The above quoted passages from the congressional reports regarding section 4980A demonstrate that Congress intended to include, within the statutory definition of "retirement distributions", all distributions from qualified plans, except those specifically excluded by the statute.  Because the taxable portion of petitioner's Transfer Refund is not a type of distribution that is specifically excluded by the statute, it therefore follows that the taxable portion of such Refund was intended by Congress to come within the definition of a "retirement distribution" for purposes of section 4980A.

F.  Section 4980A(f)

To the extent that petitioner may rely on section 4980A(f), it is clear that such section does not serve to relieve petitioner from liability for the excise tax under section 4980A(a).  Here we observe that section 4980A(f) is a "grandfather" provision that authorizes an exemption of accrued benefits in excess of $562,500 on August 1, 1986.  Subsection (f) of such section requires that an election be made with respect to an eligible individual in order to have the subsection apply. See sec. 4980A(f)(1), (5).  However, petitioner has not made the

requisite election.  Moreover, section 4980A(f)(3) defines "eligible individual" to mean any individual if, on August 1, 1986, the present value of such individual's interest in qualified employer plans exceeded $562,500.  The present value of petitioner's accrued benefit in the Retirement System as of August 1, 1986, did not exceed such amount.  Accordingly, section 4980A(f) simply has no application to the present case.

### G.  Petitioner's Other Arguments

Finally, we have considered petitioner's other arguments and find they are merely variations on the same theme that we have already addressed.[11]

### III.  Conclusion

To paraphrase the Supreme Court, we are bound by the language of section 4980A as it is written, and, even if petitioner's argument might accord with good policy, we are not at liberty to rewrite such section because we might deem its effects susceptible of improvement.  Commissioner v. Lundy, 516 U.S. ___ 116 S. Ct. 647, 656-657 (Jan. 17, 1996) (citing Badaracco v. Commissioner, 464 U.S. 386, 398 (1984)).  Accordingly, in order to give effect to our disposition of the disputed issue, as well as respondent's concession, and to permit

---

[11]  On brief, petitioner suggests that she relied on erroneous advice by either the State of Maryland or the I.R.S. or both.  However, there is no evidence in the record to provide the factual predicate for such an argument; accordingly, we need not, and do not, address the argument.

the parties to address the minor unexplained discrepancies in the record,[12]

Decision will be entered

under Rule 155.

---

[12]    See *supra* notes 5, 7.